# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOEWEALTH MATIAS                                         CIVIL ACTION

VERSUS                                                          No. 09-3256

TAYLORS INTERNATIONAL                                SECTION I
SERVICES, INC., ET AL

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Taylors
International Services, Inc. ("Taylors").  The Court finds that genuine issues of material fact
exist with respect to whether Taylors employed plaintiff, whether Taylors' alleged negligence
caused plaintiff's injury, and whether Taylors owes plaintiff maintenance and cure.
Nevertheless, the Court finds that plaintiff's conversion claims are prescribed.  Plaintiff also
concedes that defendant should be granted summary judgment on all of plaintiff's other claims.[1]
Accordingly, Taylors' motion for summary judgment is GRANTED IN PART AND DENIED
IN PART.

## *BACKGROUND*

Plaintiff, Joewealth Matias ("Matias"), a citizen of the Republic of the Phillipines, was
employed as a dishwasher on the M/V Dream Princess, a ship that was temporarily docked in
New Orleans to provide hurricane relief services following Hurricane Katrina.  The M/V Dream
Princess housed Tulane University students.

---

[1] Plaintiff does not oppose the entry of summary judgment in favor of Taylors regarding his claims with respect to
18 U.S.C. §§ 1592 and 1595, the Trafficking Victims Protection Reauthorization Act of 2003, the Alien Tort Claims
Act, intentional infliction of emotional distress, negligent infliction of emotional distress, the Fair Labor Standards
Act, the Longshore and Harbors Workers' Compensation Act, and unseaworthiness under general maritime law.

Matias secured his job on the ship through an employment agency in January 2006 and began working on the ship the same month.  A number of companies performed operations with respect to the ship, both on board the ship and on land.  Taylors and Global Seaways Panama, Inc. ("Global") provided catering and kitchen services on board the ship.  Matias alleges that he was employed by both Taylors and Global.  The parties do not dispute that Matias was a seaman.

Matias worked aboard the M/V Dream Princess from approximately January 21, 2006 through April 11, 2006.  On or about April 11, 2006, Matias collapsed on the sink while washing dishes.  The following day Matias was transported to Tulane Medical Center in New Orleans, Louisiana and diagnosed with "a left parieto-occipital hemorrhage and/or an aggravation of a [sic] arterivenous malformation"[2] (AVM), a malformation in the brain that can cause symptoms similar to stroke.  Matias alleges that his injury was caused, at least in part, by his employers' insistence that he work long hours washing dishes in an understaffed kitchen.

Shortly after collapsing, Matias alleges that employees of Taylors and Global unlawfully took his travel documents in April 2006.  Matias has been living in the United States since 2006.  At present, he has no plans to return to the Phillipines.

In April 2009, Matias filed suit against a number of companies, including Taylors, that performed operations with respect to the M/V Dream Princess.  For purposes of this order and reasons, Matias alleges that Taylors, as his Jones Act employer, is liable to Matias for negligently causing his injury.  Matias further asserts that Taylors owes him maintenance and cure.  Finally, Matias alleges that he has claims against Taylors for the conversion of his travel documents.

### *LAW AND ANALYSIS*

---

[2] First Amended Complaint, ¶ 5.

## I.     SUMMARY JUDGMENT

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must carry this burden as to each essential element on which it bears the burden of proof.  Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994).  The showing of a genuine issue of fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  Id.  The nonmoving party's evidence, however, "is to be believed, and

3

all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt

v. Cromartie, 526 U.S. 541, 552 (1999).

## II.    JONES ACT

### A.  Employer-Employee Relationship

Under the Jones Act, a seaman may bring a lawsuit only against his employer.

Scarborough v. Clemco Industries, 391 F.3d 660, 667 (5th Cir. 2004).  In determining whether

an employer-employee relationship exists, "control is the critical inquiry."  Volyrakis v. M/V

Isabelle, 668 F.2d 863, 866 (5th Cir. 1982), overruled on other grounds by In re Air Crash

Disaster Near New Orleans, La. On July 9, 1982, 821 F.2d 1147, 1163 (5th Cir. 1987).  As the

Fifth Circuit has explained:

> Factors indicating control over an employee include payment,
> direction, and supervision of the employee.  Also relevant is the
> source of the power to hire and fire.  The control which is
> exercised must be substantial; the mere possibility of some control
> over the actions of an employee will not suffice to find an
> employer-employee relationship.

Id.  " . . . [A] third person who borrows a worker may become the employer if the borrowing

employer assumes sufficient control over the worker."  Id. (citing Ruiz v. Shell Oil Co., 413 F.2d

310 (5th Cir. 1969)).[3]

---

[3] In determining whether a seamen is a borrowed servant of an employer, the Fifth Circuit has looked to criteria such
as:

> (1)  Who has control over the employee and the work he is performing, beyond mere
>      suggestion of details or cooperation?
> (2)  Whose work is being performed?
> (3)  Was there an agreement, understanding, or meeting of the minds between the
>      original and the borrowing employer?
> (4)  Did the employee acquiesce in the new work situation?
> (5)  Did the original employer terminate his relationship with the employee?
> (6)  Who furnished tools and place for performance?
> (7)  Was the new employment over a considerable length of time?
> (8)  Who had the right to discharge the employee?

4

A genuine issue of fact exists with respect to whether Taylors was Matias' employer.  In a sworn statement, Jamie Tarpley ("Tarpley"), Taylors' chief financial officer, stated that Taylors paid Matias.[4]  Although Tarpley qualified that statement by stating that Global reimbursed Taylors for such payments, Global's payments were made to Taylors, not to Matias.[5]

Additionally, Ian Wilkinson ("Wilkinson"), a Taylors employee who Matias alleges was his supervisor, produced a sworn statement in which he stated that "[b]ecause Jowealth Matias worked for Global Seaways (Panama), Inc., I did not supervise his daily activities."[6]  Matias, in turn, stated during a deposition that Wilkinson, along with others, supervised his work activities.[7]  Given these statements a genuine issue of material fact exists with respect to whether an employer-employee relationship existed under the Jones Act.

### B.  Negligence and Foreseeability

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment' . . . ."  Chandris, Inc. v. Latis, 515 U.S. 347, 354 (1995) (citing 46 U.S.C. § 688).  Negligence under the Jones Act includes any breach of duty that an employer owes to employees who are seamen, including providing for the safety of the crew.  Billedeaux v. Tidex, No. 91-134, 1993 WL 21420, *6 (E.D. La. Jan. 27, 1993).  "Under the Jones Act, the plaintiff has a 'featherweight' burden of proving causation."  Billiot v. Cenac Towing Co., Civil

---

(9)  Who had the obligation to pay the employee?

Baker v. Raymond Int'l., Inc., 656 F.2d 173, 178 (5th Cir. 1981).  Nevertheless, "[n]o one factor or combination of factors is decisive and no test has been fixed to determine the existence of a borrowed servant relationship." Trevino v. Gen. Dynamics Corp., 865 F.2d 1474, 1488 (5th Cir. 1989).  "The degree of control an employer has over the employee and the employee's work, however, has generally been considered to be the most important of the considerations." Id.
[4] R. Doc. No. 44, pg. 45.
[5] Id.
[6] R. Doc. No. 84-4, pg. 3.
[7] R. Doc. No. 84-4, pg. 41.

Action No. 07-7705, 2009 WL 910654, *2 (E.D. La. April 2, 2009) (Vance, J.).  "Plaintiff must

show that 'employer negligence played any part, even the slightest, in producing the injury or

death for which damages are sought.'"  Id. (quoting Gautreaux v. Scurlock Marine, Inc., 107

F.2d 331, 335 (5th Cir. 1997)).  "Although questions of negligence and causation in admiralty

cases are factual inquiries . . ., a plaintiff must show also that his injury was a forseeable result of

the negligent act."  Guidry v. Great Lakes Dredge & Dock. Co., 66 F.3d 322, 1995 WL 534879,

*2 (5th Cir. 1995) (unpublished) (citing Gavangan v. United States, 955 F.2d 1016, 1020-22 (5th

Cir. 1992)).

Assuming Taylors is found to be Matias' employer, a genuine issue of material fact exists

with respect to whether Taylors' alleged negligence contributed to Matias' alleged injury.

Matias asserts that Taylors' negligence aggravated his AVM.[8]  One of Matias' treating

physicians has testified that he is not aware of any medical literature suggesting that there is a

link between AVM rupture and stress, increased physical workload, or physical activity.[9]

Matias' other treating physician, Dr. Emilio Tayag, submitted a sworn statement in which he

stated that plaintiff's cerebral hemorrhage was in fact related to overwork, stress, and

overexertion.[10]  Accordingly, a genuine issue of material fact exists with respect to whether

Taylors' alleged negligence resulted in Matias' alleged injury.

Taylors argues that summary judgment is appropriate because applicable Fifth Circuit

precedent holds that stroke-like injuries are unforeseeable as a matter of law.  For example,

Taylors cites Rice v. Tidewater, 42 F.3d 642, 1994 WL 708695 (5th Cir. 1994) (unpublished) in

---

[8] R. Doc. No. 61.
[9] R. Doc. No. 84-4, pg. 53.
[10] R. Doc. No. 95-2.  Taylors objects to Matias' use of Dr. Tayag's affidavit because it was produced after the
discovery and expert report deadline.  Although the objection may be technically correct, Taylors certainly was able
to request an out of time deposition of Dr. Tayag.  Taylors could have requested a continuance of this
motion in order to supplement it with such testimony.  Such objection is rejected.

which a seamen suffered a stroke when a congenital AVM began bleeding.  The seaman claimed

the stroke was caused by stress and the long hours he was forced to work owing to his

employer's failure to hire competent coworkers.  Id. at *1.  Affirming the judgment against the

seaman, the Fifth Circuit determined that, "[a]lthough it could be foreseen that the existence of

an incompetent crew member would create more work and stress for the rest of the crew, it could

not be foreseen that this work and stress would result in a stroke of this nature."  Id.

Nevertheless, Taylors has not persuaded this Court that the holding of Rice extends beyond the

facts that the Fifth Circuit considered in that unpublished case.  There is no indication that the

seaman in Rice presented expert testimony regarding the causal relationship between stress,

overexertion, overwork, and AVM ruptures, as Matias has in this matter.  Cf. Gavagan, 955 F.2d

at 1021 (employer was not liable for a seaman's hand injury where "there [was] virtually no

evidence–expert or otherwise–that [a] taped valve [involved in such injury] presented any

unreasonable or foreseeable risk of injury . . . .").  Accordingly, a genuine issue of material fact

exists with respect to this issue.

### C.  Maintenance and Cure

A shipowner has an obligation to pay both maintenance and cure to any seaman injured

while in service to the ship.  Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002).  The

maintenance and cure obligation exists regardless of an employer's fault or a vessel's

unseaworthiness.  Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987).  In order to

recover maintenance and cure, the plaintiff must prove "(a) his employment as a seaman, (b) that

his illness or injury occurred, was aggravated or manifested itself while in the ship's service, (c)

the wages to which he may be entitled, and (d) the expenditures or liability incurred by him for

medicines, nursing care, board and lodging." Gorum v. Ensco Offshore Co., Nos. 02-2030, 02-2031, 2002 WL 31528460, at *5 (Nov. 14, 2002) (Vance, J.).

"The general rule is well settled that a seaman's right to maintenance and cure is forfeited by a willful rejection of the recommended medical aid." Coulter v. Ingram Pipline, Inc., 511 F.2d 735, 737 (5th Cir. 1975). "However, this rule is not inexorably applied and exceptions exist when reasonable grounds for refusing to follow instructions are shown." Id. Where there are doubts about a seaman's right to receive maintenance and cure, they are to be resolved in favor of the seaman. See Johnson v. Marlin Drilling Co., 893 F.2d 77, 79 (5th Cir. 1990).

Assuming Taylors is found to be Matias' employer, a genuine issue of material fact exists with respect to whether Taylors owes Matias maintenance and cure. Taylors asserts that no maintenance and cure is owed to Matias because Matias failed to follow his treating physician's instructions that he undergo follow-up medical treatment.[11] Matias, in turn, has testified that he "tried to seek medical assistance at nearby community clinics" but he was prevented from doing so because he was not in possession of his travel documents.[12] Accordingly, a genuine issue of material fact exists with respect to whether Taylors owes Matias maintenance and cure.

## III.   Conversion

Defendant is entitled to summary judgment on plaintiff's conversion claim under Louisiana law.[13] Under Louisiana law, the tort of conversion "is a delictual action governed by a one year prescription in [La. Civ. Code] art. 3492." Trust for Melba Margaret Schwegmann v. Schwegmann, --- So. 3d ---, 2010 WL 3611718, *3 (La. App. 5th Cir. Sept. 14, 2010). Louisiana Civil Code article 3492 states that "[d]elictual actions are subject to a liberative prescription of

---

[11] R. Doc. No. 84-4, pg. 56.
[12] R. Doc. No. 96-6, pg. 2.
[13] Matias also claims to have a "federal common tort law" action for conversion against Taylors. Matias has failed to identify any authority to support the proposition that such an action exists under federal law.

one year.  "Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed."  <u>Terrebonne Parish School Bd. v. Mobil Oil Corp.</u>, 310 F.3d 870, 877 (5th Cir. 2002).  "However, once it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription . . . ."  <u>Id.</u> (citing <u>In re Moses</u>, 788 So. 2d 1173, 1177-78 (La. 2001)).

Matias alleges that Wilkinson unlawfully took possession of his travel documents in May 2006, just short of three years before Matias filed this lawsuit.  Matias offers no argument as to why his state-law conversion claim has not prescribed.  Accordingly, Taylors is entitled to summary judgment on such claim.

## IV.   Other Claims

Matias concedes that Taylors is entitled to summary judgment on all other claims alleged against Taylors in the first amended complaint.[14]

### CONCLUSION

Accordingly, IT IS ORDERED that Taylors' motion for summary is DENIED to the extent it moves this Court to grant summary judgment in favor of Taylors with respect to Matias' Jones Act and maintenance and cure claims.  IT IS FURTHER ORDERED that Taylors' motion for summary judgment is GRANTED with respect to all other claims alleged against Taylors' in Matias' first amended complaint.

New Orleans, Louisiana, September 29th, 2010.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[14] R. Doc. No. 96, pg. 12.