UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEWEALTH MATIAS** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-3256** |
| **TAYLORS INTERNATIONAL SERVICES, INC., ET AL** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment[1] filed by defendant, Wilhelmsen Ship Service, Inc ("Wilhelmsen"). Plaintiff, Joewealth Matias ("Matias"), concedes that Wilhelmsen is entitled to summary judgment on all claims except those with respect to the alleged conversion of Matias' travel documents.[2] Nevertheless, the Court finds that plaintiff's conversion claim has prescribed. Accordingly, Wilhelmsen's motion for summary judgment is GRANTED and the claims against Wilhelmsen are DISMISSED WITH PREJUDICE.

### *BACKGROUND*

Matias, a citizen of the Republic of the Phillipines, was employed as a dishwasher on the M/V Dream Princess, a ship that was temporarily docked in New Orleans to provide hurricane relief services following Hurricane Katrina. The M/V Dream Princess housed Tulane University students and other persons.

Matias secured his job on the ship through an employment agency in January 2006 and began working on the ship that same month. A number of companies performed operations with

---

[1] R. Doc. No. 70.
[2] Plaintiff does not oppose the entry of summary judgment in favor of Wilhelmsen regarding his claims with respect to the Jones Act, general maritime law, 18 U.S.C. §§ 1592 and 1595, the Trafficking Victims Protection Reauthorization Act of 2003, the Alien Tort Claims Act, intentional infliction of emotional distress, and negligent infliction of emotional distress. R. Doc. No. 77; R. Doc. No. 95, pg. 14.

respect to the ship, both on board the ship and on land.  Wilhelmsen, a company that provides port-of-call support to ship operators, was hired to make arrangements for the M/V Dream Princess' stay in New Orleans.  Nevertheless, Matias does not allege that he was employed by Wilhelmsen.

Matias worked aboard the M/V Dream Princess from approximately January 21, 2006 through April 9, 2006.  On or about April 9, 2006, Matias collapsed on the sink while washing dishes.  The following day Matias was transported to Tulane Medical Center in New Orleans, Louisiana and diagnosed with "a left parieto-occipital hemorrhage and/or an aggravation of a [sic] arterivenous malformation"[3] (AVM), a malformation in the brain that can cause symptoms similar to stroke.  Matias alleges that his injury was caused, at least in part, by his employers' insistence that he work long hours washing dishes in an understaffed kitchen.

Shortly after collapsing, Matias alleges that an employee of Wilhelmsen unlawfully converted his travel documents in May 2006.  Matias has been living in the United States since 2006.  At present, he has no plans to return to the Phillipines.  In April 2009, Matias filed this lawsuit against a number of companies, including Wilhelmsen, that performed operations with respect to the M/V Dream Princess.  For purposes of this order and reasons, Matias alleges that he has a claim against Wilhelmsen for conversion of his travel documents.

## *LAW AND ANALYSIS*

### I.   SUMMARY JUDGMENT

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the

---

[3] First Amended Complaint, ¶ 5.

initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must carry this burden as to each essential element on which it bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue of fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**II.    CONVERSION**

"A conversion is an act in derogation of the plaintiff's possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." Talley v. Livingston Parish Sheriff's Office, No. 2009 CA 2133, 2010 WL 1838564, at *3 (La. App. 1st Cir. May 7, 2010) (citing Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So. 2d 756, 760 (La. 1985)).  The Louisiana Supreme Court has stated that:

> [a] conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed, 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

Dual Drilling Co. v. Mills Equip. Investments, Inc., 721 So. 2d 853, 857 (La. 1998). "[C]auses of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages." Id. at 856.  The action for damages is known as a delictual action.  Id. at 857.  Because Matias seeks only to recover "compensatory and punitive damages" with respect to the alleged conversion,[4] only the delictual action is implicated.[5]

In Louisiana, the delictual action for conversion is "governed by a one year prescription in [La. Civ. Code] art. 3492." Trust for Melba Margaret Schwegmann v. Schwegmann, --- So. 3d ---, 2010 WL 3611718, at *3 (La. App. 5th Cir. Sept. 14, 2010).  Louisiana Civil Code article 3492 states that "[d]elictual actions are subject to a liberative prescription of one year.  This

---

[4] R. Doc. No. 58-2, pg. 8.
[5] Matias also claims to have a "federal common tort law" action for conversion against Wilhelmsen.  Matias has failed to identify any authority to support the proposition that such an action exists under federal law.

4

prescription commences to run from the day injury or damage is sustained." "Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed." Terrebonne Parish School Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002). "However, once it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription . . . ." Id. (citing In re Moses, 788 So. 2d 1173, 1177-78 (La. 2001)).

Matias alleges that his travel documents were taken from him in May 2006.[6] Matias offers no compelling argument as to why his state-law conversion claim has not prescribed.[7] It is a well-settled Louisiana principle that "[the] prescriptive period for conversion is one year from the time that the plaintiff is or should be on notice of the alleged act of conversion," In re Succession of Moore, 737 So. 2d 749, 755 (La. App. 4th Cir. 1998). Matias attempts to sidestep this principle by arguing, rather obliquely, that Wilhelmsen's retention of the travel documents until 2009 constitutes a continuing tort.[8] Quoting a case that does not address the continuing tort concept in the context of conversion, Matias asserts that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated."[9]

"In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage." Talley, 2010 WL 1838564, at *4. "If the 'operating cause' of the damage

---

[6] R. Doc. No. 70-3, pgs. 124-25.

[7] In a supplemental memorandum, Matias argues that Wilhelmsen waived the affirmative defense of prescription by failing to assert such defense in its response to Matias' first amended complaint. Nevertheless, during a September 29, 2010 telephone conference with the Court, Matias' counsel agreed to waive any objection to Wilhelmsen's assertion of prescription with respect to the conversion claim.

[8] See R. Doc. No. 81, pg. 5.

[9] Id. (quoting South Central Bell Tel. Co. v. Texaco, Inc., 418 So. 2d 531, 533 (La. 1982)) (internal quotation marks omitted).

5

is discontinuous in nature, even if the damage is continuous, the continuing theory is inapplicable, and prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party." Id. See generally Crump. V. Sabine River Auth., 737 So. 2d 720, 726-27 (La. 1999). Louisiana state court cases strongly suggest that conversion of movable property is not continuous in nature. See, e.g., Talley, 2010 WL 1838564, at *4 (alleged conversion of an automobile not found to be continuous in nature even though automobile was in defendant's possession for a number of days).

Matias stated during a deposition that his travel documents were taken from him on May 15, 2006.[10] Matias further stated that when the documents were taken from him, he was told that the documents would be returned "[i]n not a long time."[11] He then stated that the documents were not returned to him despite his request for their return.[12] In a sworn statement, Matias suggested that he suffered damages as a result of the "prolonged retention" of his travel documents by John Cascio, a Wilhelmsen employee.[13]

John Cascio stated in an affidavit that "[o]n December 6, 2007, [Wilhelmsen] received an email communication from Don Everard, Director of Hope House Adult Learning Center ("Hope House"). The email communication requested the return of Mr. Matias's passport so that he could take the high school equivalency GED examination."[14] Matias has stated that he "could not secure [the release of his travel documents], even with the assistance of the personnel at the Hope House Adult Learning Center in New Orleans, Louisiana."[15] Taken together, such evidence demonstrates that no genuine issue of material facts exists with respect to whether

---

[10] R. Doc. No. 70-3, pg. 27.
[11] Id. at 28.
[12] R. Doc. No. 70-3, pg. 28.
[13] R. Doc. No. 77-2, pgs. 2-3.
[14] R. Doc. No. 70-2, pg. 6.
[15] Id.

Matias knew or should have known that his travel documents were being withheld from him more than a year before he filed this lawsuit. Matias has offered no admissible summary judgment evidence demonstrating that Wilhelmsen's alleged conversion of his travel documents was continuous in nature. Accordingly, Matias has failed to meet his burden of establishing an exception to prescription. Matias' conversion claim against Wilhelmsen has prescribed.

### IV.     Other Claims

Matias concedes that Wilhelmsen is entitled to summary judgment on all other claims alleged against Wilhelmsen in the first amended complaint.[16]

### *CONCLUSION*

Accordingly, IT IS ORDERED that Wilhelmsen's motion is GRANTED and the claims against Wilhelmsen are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, October 8, 2010.

                                                              _____
                                                                            LANCE M. AFRICK
                                                              UNITED STATES DISTRICT JUDGE

---

[16] See R. Doc. No. 77, pgs. 1-2 & R. Doc. No. 96, pg. 12. Matias also asserts that employees of Wilhelmsen made "false reports" about him to customs officials. Notwithstanding the fact that Matias' only remaining claim is a conversation claim that has prescribed, Matias offers only the sworn statement of a Wilhelmsen employee that Wilhelmsen "notified USCBP regarding [a] communication from Mr. Matias" (R. Doc. No. 70-2, pg. 35) and a statement contained in Matias' affidavit that "government agents just told me that I had been reported to them to have 'jumped ship' i.e. deserted my ship, which was not true." (R. Doc. No. 77-1, pg. 3). Such statements do not raise a genuine issue of material fact as to whether Wilhelmsen made false statements to USCBP. The sworn statement of the Wilhelmsen employee does not make reference to the content of Wilhelmsen's communication to USCBP. Furthermore, the government agents' statement is hearsay and inadmissible for summary judgment purposes. Okoye v. Univ. Of Tex. Houston Health Sci. Ctr. 245 F.3d 507, 510 n.5 (5th Cir. 2001).